IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 10-cv-000453-RPM

THERESA VIRGA,

    Plaintiff,

v.

ROBERT T. HARRISON D.D.S., P.C., and
ROBERT T. HARRISON,

    Defendants.

_____

FINDINGS, CONCLUSIONS AND ORDER
_____

    Robert T. Harrison, D.D.S., provides dental services to the public through his professional corporation, Robert T. Harrison, D.D.S., P.C., in Fort Collins, Colorado. For the relevant time the office staff consisted of two part-time dental hygienists, a dental assistant, a part-time office manager and Melinda Harrison, Dr. Harrison's wife who performed the duties of office manager on a part-time schedule. Dr. Harrison consulted with Michael Suder of PenSys, Inc., concerning retirement funding and decided to adopt the PenSys prototype-defined benefit pension plan in 2000 creating the Robert T. Harrison, D.D.S., P.C., Pension Plan ("Plan"). Ex. 21.

    The Plan is a qualified plan under the Internal Revenue Code and the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.,* (ERISA). Dr. Harrison's professional corporation is the employer and plan administrator and he is the trustee of the plan's assets. The employer is the sole contributor to the plan and Dr. Harrison as trustee makes all of the investment decisions to maintain the Plan's trust fund. He has

regularly used financial advisers in securities firms to make those decisions and he is well aware of the financial markets.

Theresa Virga has been a dental hygienist for more than 30 years, having worked in dental offices in Tennessee, Georgia and Kentucky before coming to Colorado. In September, 2002, she responded to a newspaper ad and was interviewed by Dr. Harrison who hired her immediately to work in his office on Monday, Tuesday and Thursday of each week for $35.00 per hour with 3 days paid vacation. Linda Matthews worked as a dental hygienist on Thursday and Friday of each week at the same hourly rate as Ms. Virga.

The office closed for spring break in 2003 and Ms. Virga received her vacation pay. At a luncheon meeting with his two hygienists in 2003, Dr. Hanson expressed satisfaction with their work and gave each of them a $1.00 per hour raise.

After the spring break closure in 2004, Ms. Virga asked Dr. Harrison why she had not received vacation pay. He replied that he had made her a participant in the Plan and he could not afford to pay her vacation pay in addition to the contribution made for her. This was the first notice Ms. Virga had of the existence of the Plan and her participation in it. She and her husband asked for information about it and after referring them to Mr. Suder, Dr. Harrison said that he was required to put her on the plan which was set up for his retirement.

Both hygienists received another raise to $37.00 at a luncheon meeting with Dr. Harrison in 2004. There was no such meeting in 2005. Ms. Virga asked for a $1.50

raise and received it, making her hourly rate $38.50.  In 2006, she received an additional $1.00 raise after leaving a note requesting it.

In September, 2007, Ms. Virga left a note in the morning, asking about an annual raise.  That evening, Dr. Harrison came into her room, visibly angry, and said that because he was putting a lot of money into the Plan for her he couldn't also give her a raise.  A few days later Dr. Harrison called Ms. Virga at home, telling her that patients had been complaining about her talking too much and he named a patient who came for service 4 times a year who said she was "fed up" with Ms. Virga.  This conversation was the first time Ms. Virga was criticized by Dr. Harrison for her work.  He cautioned her to "be professional in front of patients."

In October, 2007, Ms. Virga received a 50 cent raise, bringing her rate to $40.00 per hour.  Ms. Virga was cautioned about talking several times by Dr. Harrison during 2007.

In January, 2009, Ms. Virga retained an attorney to do estate planning for her and her husband.  That attorney sent written questions about the Plan to Mike Suder in a letter, dated January 23, 2009.  Ex. 1.  After obtaining permission from Dr. Harrison, Mr. Suder responded by a letter, dated February 3, 2009.  Ex. 15.

Ms. Virga served jury duty during the last week of January, 2009.  Dr. Harrison obtained the services of Amanda Zimmerman, age 27, to replace Ms. Virga during that time.

Ms. Virga returned to work in February, 2009.  She discussed receiving pay for the time on jury duty with Dr. Harrison.  On the morning of Thursday, February 9, 2009,

Dr. Harrison came to her room and told her he would pay her for 2 days of jury duty. At the end of the work day, Dr. Harrison again came to her room and told Ms. Virga that he had to let her go because of patients complaining about her and not wanting her to serve them. Ms. Virga said she didn't believe him and asked for names. Dr. Harrison gave six names. Ms. Virga gathered her personal property and left the office.

Ms. Virga brought this action under § 510 of ERISA, 29 U.S.C. § 1140, claiming that the termination of her employment was for the purpose of interfering with her right to continue her participation in the Plan and obtain the benefits due to her upon retirement at age 59. On the date of termination, Ms. Virga was two months and 56 years old. Her benefits were fully vested.

The defendants deny any discriminatory motivation and assert that the sole reason for terminating Ms. Virga's employment was patient complaints. The evidence supports the plaintiff's claim. The applicable law is found in the en banc opinion of the Tenth Circuit Court of Appeals deciding *Garratt v. Walker,* 164 F.3d 1249 (10th Cir. 1998). As explained at page 1255, this provision of ERISA is violated if a motivating factor in the employer's decision is to save the cost of the employee's participation in the plan. The court, at page 1256, instructed that an employee may rely on indirect proof to show an intent to interfere with employee benefits protected by ERISA and the employee is not required to show that this was the sole motivation, only that it was a motivating factor.

Dr. Harrison knew that he was required to invest a substantial amount of money to fund the Plan in 2009, given the market losses of 2008. In January he called Sally

Bowlby at PenSys, his regular contact with the Plan's record keeper, to learn the amount of the added contribution required.  The summary annual report for the Plan for 2008 was not received by Dr. Harrison before February 9, 2009, but in January he was well aware that he would need to make a substantial investment..  The contribution he made in March, 2009, was $85,000.  The other dental hygienist, Linda Matthews, was not a plan participant.

Dr. Harrison testified that he made the decision to fire Ms. Virga on the night of February 2, 2009, after learning of another patient complaint that he found to be the "last straw."  His wife, Melinda Harrison, testified that there were many complaints in earlier years and that she recommended firing Ms. Virga in 2007.  Dr. Harrison's earlier responses to these reports of patient complaints had been to simply schedule the complaining patients to see Ms. Matthews and that was done by putting notes in the computer.

The stated reason for termination is pretextual.  While the complaints may have been a factor, it is implausible that there was a difference in the number of them in 2008 and early 2009.  There was no record kept of the complaints and no effort to verify their substances.  Exhibit M is a list prepared by Melinda Harrison after the termination was challenged.  It shows many fewer than the number asserted.  The other employees gave sketchy testimony about complaints.  Dr. Harrison's sudden decision that he could no longer tolerate Ms. Virga's behavior with patients is so inconsistent with his work with her for over six years that it is not credible.  It is significant that Dr. Harrison had already hired Amanda Zimmerman before firing Ms. Virga.

The tax deferral benefits to a key employee from an ERISA plan come with the obligation to protect the benefits of the other participants.

Having determined that Ms. Virga has proved her claim of a violation of § 510, it is necessary to determine the remedy. She has been paid approximately $128,000. She is now entitled to the difference between what she has received and the net present value of the lump sum benefit due to her if the contributions for her had continued to retirement at age 59 under the terms of the Plan and for a reasonable attorney's fee. It is now

ORDERED, that counsel for the parties shall attempt to agree on the amounts and to submit a stipulation to the amount of judgment on or before May 27, 2011. If the parties are unable to agree, a further hearing will be scheduled.

DATED: April 27th, 2011

BY THE COURT:

s/Richard P. Matsch
_____
Richard P. Matsch, Senior District Judge